# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| DIAMOND GOODING-WILLIAMS, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Civil Action No. 1:18-cv-01177 |
| ) | Hon. Liam O'Grady |
| FAIRFAX COUNTY SCHOOL BOARD, ) | |
| ) | |
| *Defendant.* ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Fairfax County School Board's Motion for Summary Judgment (Dkt. 24). The motion is fully briefed, and the Court dispensed with oral argument. For the reasons stated below, and for good cause shown, Defendant's Motion for Summary Judgment (Dkt. 24) is hereby **GRANTED**.

### I. BACKGROUND

Plaintiff Diamond Gooding-Williams was a Human Resources ("HR") employee of Defendant Fairfax County School Board ("FCSB") for twelve years, until her termination in January 2017. As a "Human Resource Specialist, Equity and Compliance Specialist II," Ms. Gooding-Williams's responsibilities included investigating discrimination and retaliation complaints filed by FCSB employees and ensuring FCSB schools complied with HIPAA.

From December 2004 until January 2014, Ms. Gooding-Williams reported to Sherry Braithwaite. While Ms. Gooding-Williams was generally reviewed as meeting expectations by Ms. Braithwaite, Ms. Braithwaite did note some problems with Ms. Gooding-Williams's performance. In particular, Ms. Braithwaite raised concerns about Ms. Gooding-Williams's

failure to properly monitor her email inbox and ensure that an adequate number of HIPAA posters were available for distribution to all Fairfax County public school facilities.

In 2013, then-Assistant Superintendent of HR, Dr. Phyllis Pajardo, merged two HR departments into a newly created Office of Equity & Employee Relations ("EER") to improve HR's efficiency. Kevin Sills was hired as the Director of EER and tasked with improving the performance of all EER Specialists. Mr. Sills became Ms. Gooding-Williams's supervisor in January 2014.

After the restructuring, Ms. Gooding-Williams's job duties generally remained the same, with two exceptions. First, her role expanded to also include advising school principals about day-to-day conduct and performance issues for school employees. Second, rather than providing support across all Fairfax County public schools, Ms. Gooding-Williams was assigned the Region 3 schools as her "clients."

As part of the effort to improve the EER Specialists' performance, Mr. Sills began holding regular EER staff meetings. Ms. Gooding-Williams failed to attend many of these meetings, and on September 8, 2014, Mr. Sills counseled Ms. Gooding-Williams for missing the meetings and asked her to make attending them a priority.

On December 10, 2014, Ms. Gooding-Williams reviewed the minutes of an EER staff meeting she had missed while out sick for several weeks and learned that Mr. Sills had reassigned some of her HIPAA duties to Deanna Rodgers, a Senior Specialist placed in charge of supervising discrimination and HIPAA related complaints. Ms. Gooding-Williams was upset that some of her responsibilities had been reassigned without the "professional courtesy of a face-to-face meeting," and accused Mr. Sills of discriminating against her because of her race (black) and national origin (Liberian) in an email to Dr. Pajardo. Dr. Pajardo met with Ms. Gooding-

Williams to discuss her complaints on January 9, 2015. Mr. Sills was aware that Ms. Gooding-Williams was unhappy with the reassignment, but did not learn of her discrimination complaint until April or May 2015.

In the months following her January 9, 2015 meeting with Dr. Pajardo, Ms. Gooding-Williams's conduct and performance began to decline. She displayed unprofessional behavior during a meeting with Mr. Sills and a Region Assistant Superintendent, refused to sign a final version of a discrimination letter after receiving feedback from one of her supervisors, and became combative with another supervisor when that supervisor asked Ms. Gooding-Williams to recite the elements of a *prima facie* discrimination claim because the supervisor was concerned Ms. Gooding-Williams did not understand the elements. Around the same time, the EER Leadership Team also became concerned with Ms. Gooding-Williams's performance on the two or three days a week she teleworked because she was routinely unreachable and unproductive on those days.

After numerous informal attempts to address Ms. Gooding-Williams's conduct and performance issues proved unsuccessful, Mr. Sills and the EER Leadership Team decided to place Ms. Gooding-Williams on a performance improvement plan ("PIP"). Mr. Sills communicated this decision to Ms. Gooding-Williams on March 9, 2015, and documented their meeting in a Summary Memo dated March 20, 2015.

Ms. Gooding-Williams was officially placed on her PIP on April 15, 2015. From then on, Mr. Sills and the EER Leadership Team closely monitored her work. Mr. Sills also closely monitored the work of other EER employees to improve the quality and performance of the entire office. In addition to Ms. Gooding-Williams, two other employees were placed on PIPs,

one was demoted with a "last chance" agreement, and a fourth resigned after being recommended for termination. None of these other employees had engaged in protected activity.

Two days after receiving her PIP, Ms. Gooding-Williams filed a complaint with Dr. Pajardo accusing Mr. Sills of discrimination and retaliation. Mr. Sills was informed of the complaint on May 19, 2015. On June 1, 2015, Mr. Sills shared "The Eagle, The Cat, and The Sow" fable at a staff meeting. Although Mr. Sills habitually shares quotes or stories with staff either at staff meetings or posted at his office, Ms. Gooding-Williams interpreted Mr. Sills's telling of that particular fable as an attempt to pressure her to drop her complaint. Ms. Gooding-Williams also alleged that Mr. Sills pressured her to drop her complaint on June 4, 2015, when he gave her a timed writing exercise based on a fact pattern that closely mirrored her own complaint. Every employee was given a writing exercise based on one of three fact patterns, and the fact pattern Ms. Gooding-Williams received was fairly general and similar to the majority of the complaints EER receives.

Carolyn Larrabee, a staff attorney at Fairfax County Public Schools' Division Counsel's Office, investigated both Ms. Gooding-Williams's April 17, 2015 complaint and her allegations that Mr. Sills pressured her to drop the complaint. Ms. Larrabee determined that there was no evidence of discrimination, retaliation, or a hostile work environment.

On June 29, 2015, Mr. Sills informed all EER employees that, beginning September 1, 2015, each EER employee would need to designate a start time between 7:00 and 9:00 a.m. as well as an end time between 3:30 and 5:30 p.m. This change in work-time policy was ordered by Dr. Ramey, Dr. Pajardo's successor, because school principals, other clients, and Dr. Pajardo had all complained that EER employees were often not reachable during school hours. Ms. Gooding-

4

Williams had typically worked from 6:00 a.m. until 2:30 p.m. on the days she worked in the office, and perceived the required change in her schedule as retaliation for her protected activity.

Ms. Gooding-Williams's ninety-day PIP was scheduled to expire on July 15, 2015. However, while Ms. Gooding-Williams made some improvements during her PIP, she continued to suffer from ongoing conduct and performance deficiencies. For example, while on her PIP, Ms. Gooding-Williams had acted hostilely and unprofessionally during a telephone conference and failed to produce any new decision letters. Additionally, in early July two principals complained to Mr. Sills about Ms. Gooding-Williams's professionalism, expediency, and the quality of her advice. As a result of these continuing performance concerns, on July 22, 2015, Mr. Sills informed Ms. Gooding-Williams that her PIP would be continued for another 90 days.

In addition to extending the PIP, Mr. Sills also revoked Ms. Gooding-Williams's teleworking privileges effective August 17, 2015. Ms. Gooding-Williams had teleworked two to three days a week since 2006. The teleworking arrangement was not a formal accommodation, but rather an agreement of convenience which could contractually be revoked by Fairfax County Public Schools at any time. Mr. Sills revoked Ms. Gooding-William's teleworking privileges in light of her continuing lack of responsiveness while teleworking and her need for a great deal of guidance, coaching, and supervision to address her performance-related deficiencies.

Following the extension of the PIP, Ms. Gooding-Williams's performance still did not improve. Supervisors were compelled to repeatedly counsel Ms. Gooding-Williams about the need to include basic elements and analysis in her case letters, and Mr. Sills received several more complaints about her performance from clients. Concerned about Ms. Gooding-Williams's continuing conduct and performance difficulties, Mr. Sills scheduled a meeting with Ms.

Gooding-Williams on August 27, 2015 to discuss these issues. Ms. Gooding-Williams did not attend that meeting.

On September 2, 2017, Mr. Sills informed all his supervisors about his concerns regarding Ms. Gooding-Williams's conduct and performance. He also initiated a discussion with his supervisors and Ms. Larrabee regarding future steps to address Ms. Gooding-Williams's problems, such as a letter of reprimand.

On Thursday, October 15, 2015, Mr. Sills emailed Ms. Gooding-Williams to schedule a disciplinary meeting with her the following Tuesday. The next day, Ms. Gooding-Williams responded that "[g]iven this news and how I am feeling right now, I am unable to work right now" and would return to work on Monday. Rather than returning to work on Monday, however, Ms. Gooding-Williams went to the Equal Employment Opportunity Commission ("EEOC") to file a charge of discrimination against Mr. Sills. On October 20, 2015, Ms. Gooding-Williams was sent a letter of reprimand addressing the conduct that precipitated the disciplinary meeting and warning Ms. Gooding-Williams that any further improper conduct would be grounds for more severe disciplinary action including dismissal.

In the weeks and months following the letter of reprimand, Ms. Gooding-Williams's conduct and performance continued to deteriorate. Ms. Gooding-Williams took large amounts of unscheduled leave, routinely missed meetings, failed to follow instructions for investigating and documenting her cases, and needed to be counseled on the nature of the discrimination cases she was investigating. Several more principals also filed complaints about Ms. Gooding-Williams and requested that another EER Specialist be assigned to their schools. Mr. Sills's attempts to address the principals' concerns with Ms. Gooding-Williams were unsuccessful.

In May 2016, Ms. Gooding-Williams told Dr. Ramey she believed Mr. Sills was discriminating and retaliating against her, and that she had filed an EEOC complaint. On December 2, 2016, Ms. Gooding-Williams sent Mr. Sills an email stating he had "continuously discriminated against" her.

On December 14, 2016, Terry Dade, the Assistant Superintendent of Region 3 schools, contacted Mr. Sills to express his concerns regarding the complaints he had received from several of his principals about Ms. Gooding-Williams, as well as the principals' requests to have a different EER Specialist support their schools.

Faced with a significant amount of information regarding Ms. Gooding-Williams's deficient conduct and performance from multiple sources, on December 16, 2016, Dr. Ramey and Mr. Sills placed Ms. Gooding-Williams on paid administrative leave pending an internal review of Ms. Gooding-Williams's performance. As part of that review Mr. Sills reviewed Ms. Gooding-Williams's case history and interviewed the principals and EER staff members who had raised complaints about Ms. Gooding-Williams. The EER staff members confirmed that they had difficulty working with Ms. Gooding-Williams and often had to cover for her with the Region 3 schools. The principals also all confirmed that they had experienced problematic conduct and performance from Ms. Gooding-Williams. Mr. Dade, Region 3's Assistant Superintendent, also reiterated his concerns about Ms. Gooding-Williams in a follow-up letter which stated:

> I am writing this letter as a follow-up to our conversation on December 14, 2016. During that conversation, I expressed some concerns that have been raised to me by at least six principals in Region 3 regarding the lack of support they have received from Ms. Diamond Gooding-Williams. While the concerns varied in nature, they primarily focused on the following: lack of responsiveness, poor interpersonal relationships, and inaccurate guidance as it pertains to personnel matters. On separate occasions, these principals expressed their frustration and then proceeded to ask for permission to seek support from other EER specialists.
>
> My concern at this point is that I have several principals who have expressed similar concerns with the service being delivered by Ms. Gooding-Williams. I

have granted permission for principals to seek support from other EER specialists, but now I would like to request another EER specialist to support all principals in my Region.

On January 4, 2017, upon completion of the internal review, Mr. Sills recommended that Ms. Gooding-Williams be terminated based on her continuing unsatisfactory performance. Dr. Ramey reviewed Mr. Sills's recommendation, the supporting documentation, and Ms. Gooding-Williams's response. On January 19, 2017, Dr. Ramey informed Ms. Gooding-Williams of his decision to terminate her employment based on, among other things, the growing concerns regarding her performance, her conduct towards other staff members, her lack of quality support for the principals in her region, and her pattern of inappropriate and uncooperative behavior.

Ms. Gooding-Williams has raised three claims against FCSB. In Count I, Ms. Gooding-Williams alleges that FCSB subjected her "to a hostile work environment, by closely monitoring her conduct and activities, criticizing her performance, putting her on a PIP, reassigning her job duties, revoking her telework privileges, and changing her schedule, because [she] engaged in protected activity." In Counts II and III, Ms. Gooding-Williams alleges that FCSB retaliated against her because she engaged in protected activity by revoking her telework privileges and terminating her employment, respectively. FCSB has moved for summary judgment on all counts.

## II. LEGAL STANDARD

Summary judgment is appropriate where, viewing the facts in the light most favorable to the non-moving party, there remains no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Marlow v. Chesterfield Cty. Sch. Bd.*, 749 F. Supp. 2d 417, 426 (E.D. Va. 2010). A party opposing a motion for summary judgment must respond with specific facts, supported by proper documentary evidence, showing that a genuine dispute of material fact exists and that summary judgment should not be granted in favor of the

moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in original).

## III. DISCUSSION

### A. There Is No Genuine Issue of Material Fact.

In her opposition, Ms. Gooding-Williams argues that there are genuine issues of material fact. Many of the facts she identifies as being in dispute are actually agreed on by both parties. Ms. Gooding-Williams's denials of the majority of the remaining facts identified by FCSB lack citations to the record in support of the denial as required by Local Civil Rule 56(B) and/or are based on Ms. Gooding-Williams's irrelevant disagreements with the criticisms made of her conduct or work performance. *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (explaining that it is the perception of the decision-maker, not the self-assessment of the plaintiff, which is relevant in a Title VII analysis and that a plaintiff must specifically refute her employer's nondiscriminatory reasons for her adverse employment action); *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (finding that the plaintiff's own opinions and conclusory allegations, which were not supported by evidence in the record, were "not enough to withstand summary judgment"). Upon a review of the briefs and record evidence submitted by both parties, the Court finds there is no genuine dispute about any material fact in this case. Accordingly, it proper to resolve this case on summary judgment.

### B. FCSB is Entitled to Summary Judgment on Ms. Gooding-Williams's Retaliation Claims (Counts II and III).

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), establishes a burden-shifting framework for evaluating Title VII retaliatory discrimination claims where, as here, there is no

9

direct evidence of discrimination. *Foster v. Univ. of Md. E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). To prevail under this framework, Ms. Gooding-Williams must first establish a *prima facie* case of retaliation. *Id.* at 250. To establish a *prima facie* case of retaliation, Ms. Gooding-Williams must show: "(i) that she engaged in protected activity, (ii) that her employer took adverse action against her, and (iii) that a causal relationship existed between the protected activity and the adverse employment [action]." *Id.* (quoting *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)) (internal quotation marks omitted).

If Ms. Gooding-Williams establishes a *prima facie* case of discrimination, the burden shifts to the FCSB "to show that its purportedly retaliatory action was in fact the result of a legitimate nonretaliatory reason." *Id.*

If the FCSB makes this showing, the burden shifts back to Ms. Gooding-Williams to demonstrate that the FCSB's purported nonretaliatory reasons were a pretext for discrimination. *Id.* To show pretext, Ms. Gooding-Williams must establish both that FCSB's purported reasons for the adverse employment actions were false and that retaliation was the "real reason" for those actions. *Id.* at 252. In other words, at this stage in the burden-shifting framework, Ms. Gooding-Williams must satisfy her ultimate burden of proving that the alleged retaliation was a "but for" cause of the challenged adverse employment action. *Id.*

The Court assumes for the sake of argument that Ms. Gooding-Williams has established a *prima facie* case of retaliation for both Count II and Count III, and therefore will start its analysis at step two of the *McDonnell Douglas* burden-shifting framework.

FCSB has provided legitimate, nonretaliatory reasons for revoking Ms. Gooding-Williams telework privileges and terminating her employment. FCSB states that it terminated Ms. Gooding-Williams's telework privileges given her unproductiveness and nonresponsiveness

while teleworking and her need for additional supervision due to her performance deficiencies. Similarly, FCSB justifies its termination decision on the long-documented history of conduct and performance deficiencies identified by Ms. Gooding-Williams's supervisors, clients, and coworkers. FCSB has therefore met its burden under the *McDonnell Douglas* framework, and the burden shifts back to Ms. Gooding-Williams to prove that FCSB's stated reasons are pretextual.

Ms. Gooding-Williams has failed to establish that FCSB's stated reasons are pretextual. In *Buchhagen v. ICF International, Inc.*, the Fourth Circuit found that an employee failed to establish pretext where the employer had produced evidence of "a clear and long train of frustration" and "growing dissatisfaction" with the employer's conduct and work ethic. 650 F. App'x 824, 829–30 (4th Cir. May 31, 2016). The same is true in this case. FCSB has produced evidence of "a clear and long train of frustration" with Ms. Gooding-Williams's conduct, responsiveness, and performance. The evidence also demonstrates that FCSB's "growing dissatisfaction" with Ms. Gooding-Williams's conduct and performance was based on reported, legitimate concerns from multiple co-workers, supervisors, principals, and other clients, many of whom were unaware of Ms. Gooding-Williams's protected activity. In sum, the evidence submitted demonstrates neither that FCSB's stated reasons were false nor that retaliation was the reason for the challenged conduct.

As a result, FCSB is entitled to summary judgment on Plaintiff's retaliation claims.

C. **FCSB is Entitled to Summary Judgment on Ms. Gooding-Williams's Hostile Work Environment Claim (Count I).**

To prove a claim of hostile work environment based on retaliation under Title VII, Ms. Gooding-Williams must show that "(1) [she] experienced unwelcome harassment; (2) the harassment was in retaliation for protected conduct; (3) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive atmosphere; and (4)

11

there is some basis for imposing liability on the employer." *Wells v. Gates*, 336 F. App'x 378, 387 (4th Cir. July 10, 2009) (quoting *Baqir v. Principi*, 434 F.3d 733, 745–46 (4th Cir. 2006)). In her Complaint, Ms. Gooding-Williams argues that FCSB subjected her to a hostile work environment by "closely monitoring her conduct and activities, criticizing her performance, putting her on a PIP, reassigning her job duties, revoking her telework privileges, and changing her schedule." Compl. ¶ 51. Ms. Gooding-Williams has failed to establish that any of this challenged conduct was in retaliation for her protected activity or sufficiently severe and pervasive as to alter the conditions of her employment and create an abusive atmosphere.

First, the reassignment of Ms. Gooding-Williams's duties occurred before she engaged in protected activity, and therefore could not have been in retaliation for protected conduct. *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 840 (E.D. Va. 2016) (finding that an EEOC charge could not serve as "the 'protected activity' predicate" because it occurred after the alleged harassment).

Second, Ms. Gooding-Williams's change in schedule was the result of an EER-wide change in policy precipitated by principals' complaints and Dr. Pajardo's concern that EER support staff were not available during the principals' hours. Ms. Gooding-Williams alleges that the change in policy was retaliatory because it only affected her schedule. As an initial matter, there is evidence in the record that suggests the policy change affected other employees in addition to Ms. Gooding-Williams. Further, even if Ms. Gooding-Williams were the only employee affected, FCSB provided a legitimate reason for the change in the generally-applicable policy unrelated to Ms. Gooding-Williams's protected activity. FCSB explained that the change was precipitated by the concerns of the principals, who were unaware of Ms. Gooding-Williams's protected activity, about the availability of EER support staff. The change in hours

12

was also relatively minor, as it only shifted Ms. Gooding-Williams's official schedule for the days she commuted by one hour. Ms. Gooding-Williams has therefore failed to establish that the schedule change was objectively hostile or in retaliation for her protected activity. *See Wells*, 336 F. App'x at 388 (rejecting a hostile work environment retaliation claim based on a denial of sick leave in part because the denial was pursuant to generally applicable regulations).

Third, as previously indicated, FCSB has provided legitimate, nonretaliatory, non-pretextual reasons for the remaining challenged conduct, all of which were motivated by Ms. Gooding-Williams's documented, ongoing shortcomings. Ms. Gooding-Williams has therefore failed to show that any of that conduct was in retaliation for her protected activity, objectively hostile, or sufficiently severe or pervasive. *See id.* (finding that restrictions imposed on an employee based on the employee's "documented shortcomings" are not "objectively hostile and abusive" and do not "unreasonably interfere" with the employee's work performance).

Thus, Ms. Gooding-Williams has failed to establish either the causation prong or the objectively hostile and sufficiently severe or pervasive prong of a retaliatory hostile work environment claim. As a result, FCSB is entitled to summary judgment on Ms. Gooding-Williams's hostile work environment claim.

## IV. CONCLUSION

Accordingly, for the reasons stated above, and for good cause shown, Defendant Fairfax County School Board's Motion for Summary Judgment (Dkt. 24) is hereby **GRANTED**.

It is **SO ORDERED**.

July 19, 2019  
Alexandria, Virginia

Liam O'Grady  
United States District Judge

13